UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 14-284 |
| DARREN SHARPER | SECTION: "H" |

## ORDER AND REASONS

Before the Court is Defendant Darren Sharper's Petition for Relief under 28 U.S.C. § 2255 (Doc. 557). For the following reasons, the Petition is **DENIED**.

## BACKGROUND

On December 12, 2014, the Government charged Defendant Darren Sharper with distributing controlled substances to three women with the intent to commit rape, a crime of violence.[1] On May 29, 2015, Sharper entered a plea of guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in exchange for a sentence of 108 months in prison.[2] After considering the Presentence Investigation Report and for reasons stated on the record, the Court rejected the 11(c)(1)(C) agreement.

---

[1] Doc. 1.
[2] *See* FED. R. CRIM. P. 11(c)(1)(C) (providing that a court is bound to render an agreed-upon sentence if the court accepts the agreement).

The Court then gave Sharper the opportunity to withdraw his guilty plea. He did not do so. Instead, he entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).[3] This Court ultimately sentenced Sharper to 220 months in prison.

As part of his plea agreement, Sharper waived his right to directly appeal his sentence.[4] He nonetheless directly appealed his sentence to the Fifth Circuit on the grounds that he did not, in fact, waive his right to appeal his sentence and that this Court erred when calculating the appropriate Sentencing Guidelines for Sharper's sentence. The Government moved to dismiss Sharper's appeal based on Sharper's waiver, and the Fifth Circuit granted the motion.

On July 31, 2018, Sharper timely filed the instant Petition seeking post-conviction relief under 28 U.S.C. § 2255. Sharper essentially argues that this Court should vacate his 220-month sentence because his attorneys allegedly did not tell him that he was waiving his right to appeal the sentence as part of his plea agreement. Specifically, Sharper alleges the following:

> Petitioner was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to ensure that his guilty plea was knowingly and validly made, by failing to adequately counsel him on his plea agreement, failing to preserve his rights for direct appeal, and failing to object to the trial court's participation in plea negotiations.

The Government opposes Sharper's Petition.

---

[3] *See id.* 11(c)(1)(B) (providing that a court is *not* bound by a sentencing recommendation within a plea agreement).

[4] Sharper did not, however, waive his right to "raise a claim of ineffective assistance of counsel in an appropriate proceeding." Doc. 83 at 3 (Sharper's initial plea agreement); Doc. 284 at 2 (Sharper's supplemental plea agreement that incorporated by reference all provisions of his initial plea agreement except the one regarding the agreed-upon term of 108 months in prison).

# LEGAL STANDARD

## I. 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides a prisoner four grounds upon which he may seek relief from his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."[5] If a court finds that any of the four grounds exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[6] Nevertheless, "[r]elief under § 2255 is 'reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[7] "A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"[8]

## II. Ineffective assistance of counsel

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding," which includes "during sentencing in both noncapital and capital cases."[9] But "the right to counsel does not guarantee

---

[5] 28 U.S.C. § 2255(a).
[6] *Id.* § 2255(b).
[7] United States v. Casby, No. 11-0130, 2018 WL 6602088, at *2 (E.D. La. Dec. 17, 2018) (Fallon, J.) (quoting United States v. Acklen, 47 F.3d 739, 741 (5th Cir. 1995)).
[8] United States v. Jauregui, No. 13-67, 2018 WL 321708, at *2 (E.D. La. Jan. 8, 2018) (Zainey, J.) (quoting U.S. v. Arguellas, 78 Fed. Appx. 984, 986 (5th Cir. 2003)).
[9] Lafler v. Cooper, 566 U.S. 156, 165 (2012) (internal citations omitted).

3

error-free counsel."[10] The Supreme Court in *Strickland v. Washington* established a two-part test to determine when a defendant's right to effective assistance of counsel has been violated.[11] "To demonstrate that counsel was constitutionally ineffective, a defendant must show that [1] counsel's representation 'fell below an objective standard of reasonableness' *and* [2] that he was prejudiced as a result."[12]

"When evaluating the first *Strickland* criterion, [the Court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[13] Courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"[14] Overall, "judicial scrutiny of counsel's performance must be highly deferential."[15]

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[16] "A failure to establish either deficient performance or resulting prejudice defeats the [defendant's] claim."[17]

---

[10] United States v. Freeman, 818 F.3d 175, 178 (5th Cir. 2016).
[11] Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984)
[12] Lee v. United States, 137 S. Ct. 1958, 1964 (2017) (quoting *Strickland*, 466 U.S. at 688) (emphasis added).
[13] United States v. Fields, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).
[14] *Id.* at 294 (quoting *Strickland*, 466 U.S. at 689).
[15] *Id.* (quoting *Strickland*, 466 U.S. at 689).
[16] *Lafler*, 566 U.S. at (2012) (quoting *Strickland*, 466 U.S. at 694).
[17] United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 697).

# LAW AND ANALYSIS

Defendant Sharper alleges that his Sixth Amendment right to effective counsel was violated on the ground that his trial counsel: (1) "failed to ensure that his guilty plea was knowingly and willingly made;" (2) failed to "adequately counsel him on his plea agreement;" (3) failed to "preserve his rights for direct appeal;" and (4) failed to "object to the trial court's participation in plea negotiations.[18]

A lawyer does not act unreasonably—and thus does not provide ineffective assistance of counsel—when the record shows that a defendant admitted in open court to understanding the terms of his plea agreement and to having reviewed the agreement with his counsel.[19] Sharper admitted in open court on two separate occasions that he understood the terms of his plea agreement and that he had reviewed the terms of it with his counsel. The first instance occurred during Sharper's rearraignment on May 29, 2015. Sharper's attorneys, Kyle Schonekas and Billy Gibbens, attended the hearing. On that day, Sharper swore to tell the truth in court.[20] The following statements were made during the Court's colloquy with Sharper at the rearraignment:

---

[18] Doc. 557-1 at 1.
[19] *See* United States v. York, No. 3:11-111, 2014 WL 354631, at *3 (M.D. La. Jan. 23, 2014) (Jackson, J.) (holding that counsel's representation was not ineffective where record showed that the defendant admitted in court that counsel had reviewed the contents of the plea with the defendant before the plea hearing); United States v. Jimenez-Ramos, No. 8:10CR238, 2013 WL 2237858, at *3 (D. Neb. May 21, 2013) (holding that counsel's representation was not ineffective where the defendant admitted in court that he had discussed his case and his plea agreement with his attorney before his plea); and Diekemper v. United States, No. 11-154, 2013 WL 811471, at *6 (S.D. Ill. Mar. 5, 2013) (holding that counsel's representation was not ineffective where record showed that the defendant "answered affirmatively at his plea hearing when asked whether he had discussed his plea agreement with his attorney before signing it"). *See also* United States v. Hurt, 742 F. App'x 857, 858 (5th Cir. 2018) ("The rearraignment transcript establishes that the guilty plea was knowing and voluntary and that [the defendant] received close assistance of counsel.") (citing Blackledge v. Allison, 431 U.S. 63, 74 (U.S. 1977);
[20] Doc. 85 at 3.

5

> THE COURT: Did you have any difficulty reviewing the paperwork associated with this case?
>
> THE DEFENDANT: No, ma'am.[21]
>
> . . .
>
> THE COURT: Do you fully understand that by pleading guilty you are waiving your right to appeal and contest your sentence in any post-conviction proceedings except under those very limited circumstances outlined in the plea agreement?
>
> THE DEFENDANT: Yes, ma'am.[22]
>
> . . .
>
> THE COURT: Mr. Sharper, are you pleading guilty because you are, in fact, guilty?
>
> THE DEFENDANT: Yes, ma'am.[23]
>
> . . .
>
> THE COURT: Have you had an opportunity to discuss with your attorney the facts of your case and any possible defenses you may have?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you satisfied with the advice and services of your attorneys?
>
> THE DEFENDANT: Yes, ma'am.[24]

At one point, the Court asked Mark Miller, an Assistant United States Attorney, to summarize the plea agreement between the Government and Sharper. Miller noted that the agreement provided that Sharper "waived certain appellate rights, post-conviction rights, limited specifically as the

---

[21] Doc. 85 at 5.
[22] Doc. 85 at 15.
[23] Doc. 85 at 16.
[24] Doc. 85 at 17–18.

Court has indicated during the Court's previous colloquy."[25] Later on, the following statements were made:

> THE COURT: Mr. Sharper, do you have any questions regarding the plea agreement?
>
> THE DEFENDANT: No, ma'am.[26]
>
> . . .
>
> THE COURT: Do you fully understand the consequences of your plea of guilty?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you pleading guilty because you are, in fact, guilty?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you pleading guilty voluntarily and of your own free will?
>
> THE DEFENDANT: Yes, ma'am.[27]

At the time of his rearraignment, the record shows that Sharper knew the terms of his plea agreement and that his attorneys worked closely with him in counseling him throughout his case.

Slightly complicating this issue of Sharper's knowledge is the fact that the Court rejected the 11(c)(1)(C) agreement that the Government and Sharper presented to this Court at Sharper's rearraignment. Nevertheless, Sharper ultimately pleaded guilty pursuant to an agreement that incorporated all the same provisions of Sharper's original agreement with one notable substitution: the provision regarding 11(c)(1)(C) had been swapped for one referencing

---

[25] Doc. 85 at 19.
[26] Doc. 85 at 20.
[27] Doc. 85 at 25.

11(c)(1)(B).[28] Thus, Sharper's plea agreement included a provision that waived his right to directly appeal his sentence.

During Sharper's subsequent plea hearing, which occurred on March 22, 2016, the Court asked the Government to summarize the plea agreement that the parties had entered into. Michael McMahon, an Assistant United States Attorney, explained that the agreement was "actually a supplement to the agreement reached that is reflected in Record Document 83.[29] He explained that the agreement was memorialized in a letter.[30] The following colloquy then ensued among the Court, McMahon, Sharper, and Gibbens:

> MR. McMAHON: . . . I have a letter dated today. Mr. Sharper, have you had a chance to review this letter?
>
> THE DEFENDANT: Yes, sir.
>
> MR. McMAHON: Mr. Gibbens, have you?
>
> MR. GIBBENS: Yes.
>
> MR. McMAHON: And is that your signature, Mr. Sharper?
>
> THE DEFENDANT: Yes, sir.
>
> MR. McMAHON: Mr. Gibbens, your signature?
>
> MR. GIBBENS: Yes.
>
> MR. McMAHON: Signifying that you understand and accept the terms of this supplemental agreement, which, again, complements Document 83, which was your plea agreement entered into on May 29th of 2015. Correct?
>
> THE DEFENDANT: Yes, sir.
>
> MR. McMAHON: Do you have any questions of me? Do you have any complaints? Now is the time to raise it.

---

[28] *See* Doc. 284 at 2 ("The parties stipulate that the remaining terms outlined in Record Document 83 [Sharper's original plea agreement] remain in place, and that agreement is incorporated in full by reference as if set forth fully herein, excepting the original, now rejected Rule 11(c)(1)(C) provision.").
[29] Doc. 551 at 4.
[30] *Id.*

8

THE DEFENDANT: No, sir.

MR. McMAHON: All right. Do you accept the terms of this agreement?

THE DEFENDANT: Yes, sir.

MR. McMAHON: Mr. Gibbens, do you?

MR. GIBBENS: Yes.

MR. McMAHON: And, Your Honor, I would file the -- I'd offer this into the record, the original.

THE COURT: Mr. Gibbens, is this the plea agreement that your client has entered into?

MR. GIBBENS: Yes, ma'am.

THE COURT: And is this -- I've previously been provided -- is this the same plea agreement that was previously provided to my office?

MR. McMAHON: It is, Your Honor. Yes.

THE COURT: Okay. Let this be entered into the record. Mr. Sharper, did you understand the comments made by Mr. McMahon in reviewing the plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is that your understanding of the plea agreement entered in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you read the plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: And did you understand everything in the agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Is there anything either in the agreement or articulated by Mr. McMahon this morning with which you disagree?

THE DEFENDANT: No, ma'am.

THE COURT: Is there anything that has been left out of the plea agreement?

THE DEFENDANT: No, ma'am. No, ma'am.

THE COURT: Is there anything you want me to explain to you?

THE DEFENDANT: No, ma'am.[31]

. . .

THE COURT: I'm going to ask you again: Do you fully understand the charges against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you fully understand the consequences of your plea of guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you pleading guilty -- have you pled guilty because you are, in fact, guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you pled guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, ma'am.

THE COURT: And although you've indicated throughout these proceedings that you want to persist in your plea of guilty, do you realize at this moment I would allow you to still withdraw your plea of guilty and go to trial?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you wish to do that?

THE DEFENDANT: No, ma'am.[32]

"Solemn declarations in open court carry a strong presumption of verity."[33] On numerous occasions during Sharper's final plea hearing, he told

---

[31] Doc. 551 at 4–7.
[32] Doc. 551 at 9–10.
[33] *Blackledge*, 431 U.S. at 74.

this Court that he understood the terms of his plea agreement. He had previously told this Court that he knew by pleading guilty that he was waiving his right to directly appeal his sentence except in the limited circumstances outlined in his plea agreement. He and his attorneys signed and read his initial plea agreement and the supplement to that agreement. The record shows that Sharper knew what his plea agreement entailed and that his attorneys had discussed the agreement with him.

Darren Sharper's legal team consisted of highly experienced and well-respected attorneys.[34] His plea agreement was the result of complex negotiations meant to help Sharper avoid the possibility of several lifetimes in jail on allegations that he drugged and raped numerous women in several states. This Court believes that Sharper's claim that he did not know the terms of his plea agreement and that his attorneys had not counseled him regarding the agreement is merely an attempt to avoid the harsh consequences of his actions.

Even if Sharper truly did not know that he waived his right to directly appeal his sentence as part of his plea agreement, his ineffective assistance claims would fail because he has not shown the required prejudice. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[35] Sharper notes in the memorandum in support of his § 2255 Petition that he "intended, and still intends, to accept responsibility for his behavior. He does not seek to escape

---

[34] *See* Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) ("Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel.").

[35] Hill v. Lockhart, 474 U.S. 52, 59 (1985).

11

blame in this matter."[36] Nowhere in Sharper's Petition does he allege that he would have avoided pleading guilty and instead gone to trial if he had known that he would have to waive his right to appeal his sentence as part of his plea agreement. Instead, Sharper describes the prejudice he suffered as follows: because his attorneys did not tell him that he was waiving his right to appeal his sentence as part of his plea agreement, the Fifth Circuit dismissed his appeal; if he had been allowed to appeal his sentence, the Fifth Circuit would have vacated this Court's sentence and required this Court to render a new sentence. Sharper's claim of prejudice is entirely speculative, and it is not the type of prejudice required to maintain an ineffective assistance of counsel claim.

Finally, this Court notes that at no point did this Court ever participate in the plea negotiations in this case. Sharper argues that when this Court rejected his 11(c)(1)(C) agreement, it expressed a "preference for a plea" because it indirectly stated that Sharper was not required to withdraw his plea of guilty.[37] This argument lacks merit. After rejecting the 11(c)(1)(C) agreement, the Court stated:

> THE COURT: . . . Having rejected the agreement, Mr. Sharper, I explained to you when I first -- you first entered into this plea that I was not required to follow the plea agreement. Do you recall that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. Do you understand that I will give you an opportunity to withdraw your plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that if you choose not to withdraw your plea agreement, I may dispose of the case less favorably toward you than the plea agreement contemplated?

---

[36] Doc. 557-1 at 38.
[37] Doc. 557-1 at 34.

> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you prepared to withdraw your plea agreement at this time or would you like additional time to consult with your attorneys?[38]
>
> . . .
>
> THE COURT: Mr. Sharper, as I told you, you may withdraw your plea of guilty at any time before sentencing is imposed. Accordingly, sentencing is set in this matter for March 3rd, 2016, at 9:30. Mr. Sharper, you will have the opportunity to withdraw your plea agreement at that time or at any time prior to that day. Otherwise, sentencing shall be imposed.[39]

The record shows that this Court presented Sharper with numerous opportunities to withdraw his guilty plea before this Court ultimately sentenced him to 220 months in prison. The fact that the Court mentioned that Sharper could choose to maintain his guilty plea does not constitute interference with the plea negotiation process. Sharper has not alleged any other manner in which this Court participated in his plea negotiations. Because this Court never participated in Sharper's plea process improperly, his counsel never ever had an opportunity to object to such participation. As such, Sharper's claim of ineffective assistance of counsel on this ground has no merit.

Defendant Sharper's trial counsel did not engage in any objectively unreasonable conduct while representing him. Even if they had failed to inform him of his appeal waiver, such a mistake would not have prejudiced Sharper because he has not indicated that he would have changed his plea and gone to trial if he knew the waiver was part of his plea agreement. To the contrary, Sharper maintains to this day that he intends to accept responsibility for his

---

[38] Doc. 259 at 11.
[39] Doc. 259 at 13.

13

criminal activity. Therefore, Sharper's ineffective assistance of counsel claims fail.

## **CONCLUSION**

For the foregoing reasons, Sharper's § 2255 Petition is **DENIED**.

New Orleans, Louisiana this 9th day of July, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**